# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| GINA GARCIA NAVARETTE, | ) |
| | ) |
| Plaintiff, | )   Case No.: 2:18-cv-01805-GMN-NJK |
| vs. | ) |
| | )   **ORDER** |
| POLY-WEST, INC., | ) |
| | ) |
| Defendants. | ) |

Pending before the Court is the Motion to Compel Arbitration, (ECF No. 56), filed by Defendant Poly-West ("Defendant"). Plaintiff Gina Garcia Navarette ("Plaintiff") filed a Response, (ECF No. 60), and Defendant filed a Reply, (ECF No. 64). For the reasons discussed below, the Court **GRANTS** Defendant's Motion to Compel Arbitration.

## I.   BACKGROUND

Plaintiff began working for Defendant as a "packer" in December 2014. (First. Am. Compl. ("FAC") ¶ 17, ECF No. 15). Beginning in November 2016 and on, Plaintiff was allegedly harassed by her fellow employees and supervisors. (*Id.* ¶¶ 17,18). The alleged harassment focused on Plaintiff's identity as a transgender woman and she was "criticized for her work performance due to her identity and not because of any legitimate business reason." (*Id.* ¶ 18). According to Plaintiff, Defendant failed to promote her from "packer" to "machine operator" and neglected to provide Plaintiff with a pay raise even though other "packers" who began working after Plaintiff were provided with raises. (*Id.* ¶ 19). In February 2017, Plaintiff's supervisor allegedly disciplined her for emailing Human Resources about her work situation. (*Id.* ¶ 20).

On September 18, 2018, Plaintiff commenced this case by filing her Complaint, which she amended on April 12, 2019. Plaintiff alleges that Defendant's conduct violated Title VII of

the Civil Rights Act of 1964 and Nevada's anti-discrimination statutes. (*Id.* ¶¶ 1, 16–30).  On February 4, 2020, Defendant moved to compel arbitration of all of Plaintiff's claims. (Mot. Compel, ECF No. 56).  The basis for compelling arbitration purportedly arises from two agreements that Plaintiff signed with Defendant in 2016 and 2017, as a condition of employment. (*Id.* 1:26–28).  The relevant portion of the purported agreements state,

> Any and all Claims, complaints, disputes, demands, and causes of action (hereafter collectively "Claims") the Employee presently has or may have in the future, against Company . . . shall be submitted to mandatory arbitration, pursuant to this Agreement. This applies to, but is not limited to…alleging violation(s) of any federal statute, including, but not limited to the Americans with Disabilities Act, Title VII of the 1964 Civil Rights Act (as amended) . . . alleging violation(s) of any state statute, including, but not limited to, any anti-discrimination statute . . . .

(Employee Handbook, Ex. A to Mot. Compel, ECF No. 56-1).

## II.  <u>LEGAL STANDARD</u>

Section 2 of the Federal Arbitration Act ("FAA") provides that:

> A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9. U.S.C. § 2.  "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).  Courts place arbitration agreements "upon the same footing as other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trs. Of Leland Sandford Junior Univ.*, 489 U.S. 468, 478 (1989).

Under the FAA, parties to an arbitration agreement may seek an order from the Court to compel arbitration. 9 U.S.C. § 4.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to

1  arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*

2  *Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  Thus, the Court's "role under the [FAA] is …

3  limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2)

4  whether the agreement encompasses the dispute at issue." *Lee v. Intelius, Inc.*, 737 F.3d 1254,

5  1261 (9th Cir. 2013).  The party seeking to compel arbitration "bears the burden of proving the

6  existence of a valid arbitration agreement by [a] preponderance of the evidence." *Bridge Fund*

7  *Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010).  If a district

8  court decides that an arbitration agreement is valid and enforceable, then it should either stay or

9  dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–

10  77 (9th Cir. 2006).

## III.   <u>DISCUSSION</u>

12          The Court's role begins with the threshold issue of determining whether an arbitration

13  agreement exists between Plaintiff and Defendant. *Three Valleys Mun. Water Dist. v. E.F.*

14  *Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991).  Because an agreement to arbitrate is a

15  matter of contract, Nevada law governs this dispute over arbitrability. *First Options of Chicago,*

16  *Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (explaining that, "generally . . . [courts] apply

17  ordinary state-law principles that govern the formation of contracts.").  Defendant, moreover,

18  bears the burden of proving by a preponderance of the evidence that a valid agreement exists

19  between it and Plaintiff. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019);

20  *Obstetrics & Gynecologists Willian G. Wixted, M.D., et. Al. v. Pepper*, 693 P.2d 1259, 1260

21  (Nev. 1985); *see also* Nev. Rev. Stat. 38.219(2).  Relatedly, when considering this motion to

22  compel arbitration which is opposed on the ground that no agreement to arbitrate had been

23  made between the parties, the Court gives Plaintiff "the benefit of all reasonable doubts and

24  inferences that may arise." *Mwithiga v. Uber Techs., Inc.*, 376 F. Supp. 3d 1052, 1059 (D. Nev.

25  2019).

1    Here, Defendant moves to compel arbitration of this dispute on the basis that Plaintiff

2    executed arbitration agreements in 2016 and 2017 as a condition of her employment.

3    Defendant contends that these agreements encompass all of Plaintiff's claims as alleged in the

4    First Amended Complaint, (ECF No. 15). (Mot. Compel 4:3–5:10).  Plaintiff, by contrast,

5    claims that Defendant has not authenticated Plaintiff's signature on the two arbitration

6    agreements and, therefore, cannot have this Court enforce them. (Resp. 2:10–11, ECF. No. 60)

7    (contending that Defendant has not followed the appropriate authentication procedures for the

8    Court to recognize the agreements and compel arbitration).  However, Plaintiff does not

9    explicitly claim that the signatures on Defendant's proffered arbitration agreements are not

10   hers.

11   Addressing first Plaintiff's authentication argument, Defendant must present the Court

12   with evidence "sufficient to support a finding that the item is what [Defendant] claims it is."

13   *Ortiz v. Hobby Lobby Stores, Inc.*, 52 F. Supp. 3d 1070, 1077 (E.D. Cal. 2014).  The question

14   of whether Defendant has sufficiently proven authenticity to justify admission into evidence

15   "rests in the sound discretion of the trial judge." *Id.*  And in exercising that discretion here, the

16   Court finds that Defendant has provided sufficient evidence to authenticate the arbitration

17   agreements through references to deposition testimony and signature comparisons.

18   Specifically, Plaintiff admits in her deposition that she previously signed arbitration agreements

19   with Defendant, and Plaintiff never contested the authenticity of her signatures on the 2016 and

20   2017 agreements containing the at-issue arbitration provisions. (*See* Resp. 4:24–5:9) (arguing

21   that, at one point later on, Plaintiff refused to sign "*an* arbitration agreement") (emphasis

22   added).  Defendant also provided multiple documents to compare and prove Plaintiff's

23   signatures on the 2016 and 2017 documents agreeing to arbitration.  Thus, Defendant has

24   proven by a preponderance of the evidence that valid, written arbitration agreements exist

25   between Defendant and Plaintiff.

Because the Court denies Plaintiff's authentication objection, the Court moves to the next step in the analysis of determining if either of the arbitration agreements encompass Plaintiff's claims.  The Court finds that they do.  The arbitration agreements expressly cover claims such as those asserted in this case arising under the Civil Rights Act of 1964 and state law discrimination claims. (Employee Handbook, Ex. A to Mot. Compel, ECF No. 56-1). Further, the agreements require arbitration for causes of action that Plaintiff had against Defendant at the time of the agreements *and* "in the future." (*Id.*).  Accordingly, Defendant's Motion to Compel Arbitration is granted, and Plaintiff's action is dismissed without prejudice. *See Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (explaining a court has the authority to dismiss an action when all claims are subject to arbitration).

## IV.   **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration, (ECF No. 56), is **GRANTED**.

The Clerk of the Court shall close the case.

**DATED** this __27__ day of May, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court